UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

EDWIN CINTRON PAGAN,

    Plaintiff,

    v.

MUNICIPIO DE TOA ALTA, et al.,

    Defendant.

Civil No. 04-1645 (JAF)

**OPINION AND ORDER**

Plaintiff Edwin Cintrón Pagán ("Cintrón") brings the present action against Defendants Municipio de Toa Alta ("the Municipality"), Rafael López González, Edwin Ortega Cotté, and Carmen Luisa Jiménez, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a) (2005) and Puerto Rico law. Docket Document No. 1. Defendants now move to dismiss, arguing that when Cintrón signed a settlement agreement with the Municipality on January 30, 2003, dismissing an earlier political discrimination litigation between them, he also released his present ADA retaliation and hostile work environment claims. Docket Document No. 51. We deny Defendants' motion because it is untimely and, in any event, unavailing.

**I.**

**Factual and Procedural Synopsis**

We derive the following relevant facts from the narrative developed in our December 14, 2005, Opinion and Order, the instant motion to dismiss, and the parties' filings in response thereto. Docket Document Nos. 45, 51, 61, 63.

Cintrón, who has just one leg and uses a wheelchair, began working for the Municipality in 1998 through a series of consecutively-renewed, fixed-term employment contracts. In 2001, while he was working as a radio operator for the Office of Medical Emergency and Disasters Management, he requested disability accommodations, such as increased wheelchair accessibility and a fixed work schedule. His request was denied.

On August 23, 2001, Cintrón joined twenty other individuals in filing an Amended Complaint with this court, in a claim substantively unrelated to the present disability discrimination action, against the Municipality, alleging political discrimination that constituted a violation of 42 U.S.C. § 1983 and various Puerto Rico laws ("the political discrimination lawsuit"). Chárriez Báez v. López González, Civ. No. 01-1443; Docket Document No. 112.

On April 16, 2002, while his political discrimination lawsuit was still pending, Cintrón filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), charging the Municipality with disability-based employment discrimination.

A few weeks after the EEOC complaint was filed, the Municipality assigned Cintrón to the night shift, a move that was contrary to the

fixed-schedule accommodation he had requested.  Although Cintrón's supervisor, Edwin Ortega Cotté, had allegedly always harassed and made fun of him, Cintrón alleges that the harassment got worse after he filed the EEOC charge.  On more than one occasion Ortega told Cintrón not to "fuck any more [sic]; what is your disability?"

On April 29, 2002, thirteen days after Cintrón filed his EEOC complaint, the Municipality gave him a two-month contract to expire on June 30, 2002.  During this period, he was still working as a radio operator. When the two-month contract expired, the Municipality entered a new six-month employment contract with Cintrón from July 1, 2002, until December 31, 2002.

In December 2002, the Municipality transferred Cintrón from his work as radio operator to work as medical supplies warehouse dispatcher.  The physical demands of this job – constant use of force and constant movements – were difficult given his use of a wheelchair.

Another six-month employment contract for Cintrón's services was entered covering January 2, 2003, until June 20, 2003.  Nearly one month into that contract, on January 30, 2003, Cintrón, along with his co-plaintiffs, signed a settlement agreement with the Municipality pertaining to the political discrimination lawsuit whereby Cintrón agreed to "forever release and discharge" the Municipality of all claims he "may have had, may have, or may hereafter acquire" against the Municipality "except for any claim or

cause of action. . . based solely on discrimination on account of his disability, including without limitation, actions pending or to be filed with OPPI or the EEOC."

Cintrón later received another one-month contract with the Municipality, this time from August 1, 2003, until August 31, 2003, and then another from September 1, 2003, until September 30, 2003.

On September 11, 2003, the EEOC ruled on Cintrón's complaint in his favor. Nineteen days later, with the expiration of the final one-month contract on September 30, 2003, Cintrón's employment with the Municipality ended; there was no further contract renewal.

Cintrón filed the present complaint on June 25, 2004, alleging claims for retaliation and hostile work environment under the ADA and a claim for termination of his employment without just cause under Law 80 of the Puerto Rico Civil Code. Docket Document No. 1. He requests monetary and injunctive relief. Id.

On March 10, 2006, ten days before this case's trial was to begin, Defendants moved to dismiss Cintrón's complaint, invoking the January 20, 2003, settlement agreement as having discharged Cintrón's ADA retaliation claim. Docket Document No. 51. On March 20, 2006, Cintrón responded, Docket Document No. 61, and Defendants replied on March 20, 2006. Docket Document No. 63.

**II.**

**Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "we accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 62 (1st Cir. 2004) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)); see also Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). We then determine whether the plaintiff has stated a claim under which relief can be granted.

We note that a plaintiff must only satisfy the simple pleading requirements of Federal Rule of Civil Procedure 8(a) in order to survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Morales-Villalobos v. Garcia-Llorens, 316 F.3d 51, 52-53 (1st Cir. 2003); DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55-56 (1st Cir. 1999). A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," FED.R.CIV.P. 8(a)(2), and need only give the respondent fair notice of the nature of the claim and petitioner's basis for it. Swierkiewicz, 534 U.S. at 512-515. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations.'" Id. at 514 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III.

### Analysis

Defendants submit that Cintrón discharged his right to file the present ADA hostile work environment and retaliation claims when he signed the January 30, 2003, settlement agreement releasing the Municipality from any claim Cintrón might have against it with the exception of those relating to disability discrimination. Docket Document No. 51. Cintrón submits first, that Defendants' motion is untimely and should not even be considered, and second, that even if it were considered, neither his ADA hostile work environment claim nor his ADA retaliation claim were discharged by the January 30, 2003, settlement agreement. Docket Document Nos. 52, 61. We will take each argument in turn.

Cintrón argues that we should strike Defendants' motion to dismiss because it was filed on March 10, 2006, which was: (1) ten days before trial was slated to begin, and (2) over seven months after the August 16, 2005, deadline that this court set for dispositive motions. Docket Document No. 52. Defendants' attorney claims that he "did not know about the existence of said documents" earlier. Docket Document No. 63.

In <u>Hernandez-Loring v. Universidad Metropolitana</u>, 233 F.3d 49, 51 (1st Cir. 2000), the First Circuit endorsed a district court's modification of its scheduling deadlines to hear an untimely-filed summary judgment motion under Rule 16(b) of the Federal Rules of Civil Procedure, stressing that Rule 16(b) permits a district court to modify a scheduling order "upon a showing of good cause." FED. R. CIV. P. 16(b).

We fail to understand, however, and Defendants do not help to explain, what the "good cause" is in this case. Compare <u>Northeast Drilling, Inc. v. Inner Space Services, Inc.</u>, 243 F.3d 25, 37 (1st Cir. 2001) (affirming district court's refusal to join additional parties after joinder deadline when the moving party had not articulated any good cause to excuse the belated filing), with <u>Hernandez-Loring</u>, 233 F.3d at 51 (holding that district court had not abused its discretion in finding that the plaintiff's discovery delays provided good cause for the defendant's late summary judgment filings). Defendants' flip assertion that they have just now found the settlement agreement is unacceptable to establish good cause, because they should have been able to unearth the settlement agreement sooner simply by taking a look at municipality files or perhaps by having a brief conversation with the appropriate municipality functionary. <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992)(focusing Rule 16(b)'s 'good cause" standard on the diligence of the party seeking exception to a

scheduling order deadline: "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."). One would think, for instance, that the municipality would have put a copy of the settlement agreement in Cintrón's personnel file after he sued the municipality for political discrimination and then settled the claim for thousands of dollars.

Even supposing Defendants had shown good cause to justify their untimely motion, we would still hold that the settlement agreement does not bar the current action. Defendants argue that Cintrón's ADA hostile work environment claim is not a disability discrimination claim exempt from discharge by the settlement agreement. <u>Docket Document No. 51</u>. Cintrón's hostile work environment claim, however, is brought under an ADA provision stating that no employer covered by the Act "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." <u>See</u> 42 U.S.C. § 12112(a)(2005). We fail to see how Cintrón's hostile work environment claim does not constitute disability discrimination when the ADA explicitly defines it as such and, therefore, hold that it has survived the settlement agreement under that document's exception for disability discrimination claims.

Defendants next argue that Cintrón's ADA retaliation claim is not a disability discrimination claim and was, therefore, also discharged by the settlement agreement. <u>Docket Document No. 51</u>. We

disagree. In Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 174 (2005), in the context of Title IX sex discrimination, the United States Supreme Court held that retaliation against a person for filing a sex-discrimination complaint is sex-based discrimination because "it is an intentional response to the nature of the [underlying] complaint." Following the Jackson Court's logic, we similarly rule that retaliation against an individual for complaining about disability discrimination is, in effect, just another form of disability discrimination, and that Cintrón's ADA retaliation claim is, therefore, not barred by the settlement agreement that makes exception for disability discrimination claims.

Even if retaliation did not constitute discrimination, there would be yet another problem with Defendants' position that the settlement agreement precludes Cintrón's retaliation claim, which is that part of Cintrón's retaliation claim did not accrue until September 2003,[1] eight months after the settlement agreement was drafted. Defendants contend that the retaliation claim's September 2003 accrual is immaterial given the settlement agreement's language extinguishes any federal causes of action which Cintrón "may have, or may hereafter acquire," against it. To the extent that this settlement agreement provision seeks prospective waiver of ADA

---

[1] The municipality allegedly failed to renew Cintrón's contract after his last one expired on September 30, 2003, in response to the EEOC's September 11, 2003, decision in favor of Cintrón's complaint.

claims, however, we find it unenforceable. <u>Alexander v. Gardner-Denver</u>, 415 U.S. 36, 51 (1974)("[T]here can be no prospective waiver of an employee's rights under Title VII."; <u>see also</u> <u>Rivera-Flores v. Bristol-Myers Squibb Caribbean</u>, 112 F.3d 9, 10 (1st Cir. 1997)("[T]he general principles for evaluating such waivers and releases, enunciated by this court for claims arising under other employment statutes, apply to the ADA as well. . . ."); <u>Rodriguez v. Wackenhut Corp.</u>, 2000 WL 825677 at *2 n.2 (E.D.La. 2000)(responding to plaintiff's argument that settlement agreement is wholly invalid because it purports to waive future claims by stating that the release will remain valid only insofar as it is not applied to any claim arising after the date it was executed); <u>Gustafson, Inc. v. Bunch</u>, 1999 Wl 766020 at *2 (N.D.Tex. 1999)(holding that a settlement agreement's prospective waiver of an employee's ADA claims was unenforceable because such waiver is prohibited); <u>Westfall v. City of Cohoes</u>, 1988 WL 79202 at *7 n.14 (N.D.N.Y. 1988)(doubting that ADEA rights can be waived prospectively, citing <u>Alexander</u>).

In sum, we deny Defendants' present motion to dismiss not only because of its inexcusable untimeliness, but also because the substantive arguments therein have no foundation in the law.

**IV.**

**Conclusion**

For the foregoing reasons, we deny the municipality's motion to dismiss based on the settlement agreement in full.

Civil No. 04-1645 (JAF)                                                      -11-

1      **IT IS SO ORDERED.**

2      San Juan, Puerto Rico, this 31st day of May, 2006.

3                                              S/José Antonio Fusté
4                                               JOSE ANTONIO FUSTE
5                                              Chief U.S. District Judge